Matter of Camden J. (William J.) (2018 NY Slip Op 08977)

BODY {
font-family : "Times New Roman", Times, serif;
font-size : larger;
}

P {
line-height: 150%;
text-indent: 2em
}

Matter of Camden J. (William J.)

2018 NY Slip Op 08977

Decided on December 27, 2018

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 27, 2018

525623

[*1]In the Matter of CAMDEN J., Alleged to be a Neglected Child. CHENANGO COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; WILLIAM J., Appellant, et al., Respondent.

Calendar Date: November 14, 2018
Before: Devine, J.P., Mulvey, Aarons, Rumsey and Pritzker, JJ.


Pamela B. Bleiwas, Ithaca, for appellant.
Sarah C. Fitzpatrick, Chenango County Department of Social Services, Norwich, for respondent.
Christopher Hammond, Cooperstown, attorney for the child.

MEMORANDUM AND ORDER
Mulvey, J.
Appeal from an order of the Family Court of Chenango County (Revoir Jr., J.), entered August 18, 2017, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 10, to adjudicate the subject child to be neglected.
Respondent William J. (hereinafter the father) and respondent Tiffany RR. (hereinafter the mother) are the parents of a child (born in 2015). Two days after the child's birth, petitioner filed a neglect petition against both parents alleging that, during the mother's pregnancy with the child, the mother misused multiple prescription medicines that were not prescribed to her, including oxycodone, suboxone and opiates, and that, at birth, the child and the mother tested positive for oxycodone. Another child of the mother was removed from her home just two months before the subject child's birth due to the mother's ongoing drug abuse. With regard to the father, the petition alleged that he "knew or should have known" that the mother was taking unprescribed drugs during her pregnancy, placing the child at imminent risk of serious harm. The child was removed from the parents' custody and ultimately placed with the paternal grandparents, and the father was given unsupervised visitation time at the grandparents' home.
In December 2016, petitioner and the father agreed that the neglect petition against the father would be resolved with an adjournment in contemplation of dismissal (hereinafter ACD) subject to certain conditions (see Family Ct Act § 1039). Among other terms, the ACD directed the father to engage in any services recommended by petitioner, to provide for the child's needs, including securing adequate housing and employment, to permit monitoring of his home for [*2]compliance and safety and to complete parenting classes. Pursuant to that agreement, the father made a sworn admission to the factual allegations against him in the petition, including that he was aware that the mother was addicted to medications that had not been prescribed to her and that he knew or should have known that she was taking these drugs throughout her pregnancy, placing the child at imminent risk of serious harm. The father also admitted that he knew the mother was taking prescription medication not prescribed to her when she was acting as the sole caretaker of her other child. Family Court issued an ACD order finding that the father had admitted acts that constituted neglect, and continued placement of the child with the grandparents under petitioner's supervision.
In June 2017, petitioner moved to restore the neglect proceeding against the father to Family Court's calendar based upon allegations that he had failed to comply with many of the conditions in the ACD order. A hearing was held at which two caseworkers testified, but the father did not testify. Family Court found that the father had violated the terms and conditions of the ACD order, vacated that order and restored the neglect proceeding against him. The court further found, based upon the testimony and the father's earlier admissions, that the father had neglected the child, and continued placement with the grandparents. The father was placed under the supervision of petitioner for a period of one year, subject to terms and conditions similar to those contained in the ACD order. The father appeals.
The father does not dispute that he admitted the factual allegations that resulted in the ACD order or contest that admission and, likewise, does not challenge Family Court's restoration of the neglect proceeding or its finding that he violated the conditions of the ACD order. The father also does not dispute that he is a person legally responsible for the child's care (see Family Ct Act § 1012 [g]). Rather, the father's sole argument on appeal is that there was an insufficient basis upon which to support Family Court's finding that he neglected the child. We disagree.
Initially, we address the position of the attorney for the child that the father's appeal should be dismissed [FN1] because he waived his right to appeal at the ACD proceeding. While it is true that one of the numbered conditions included in the ACD order was that the father waived his right to appeal that order, Family Court did not at any point during the recorded proceedings address the father's appellate rights or the waiver of appeal, and only generically ascertained that the father had reviewed the ACD conditions with his attorney (compare Matter of Shaniyah D.C. [Olivia C.], 143 AD3d 608, 609 [2016]). Assuming, without deciding, that a proper waiver of appeal is enforceable in this ACD context, which is "not a determination on the merits" and "is not akin to a finding of parental neglect" (Matter of Marie B., 62 NY2d 352, 359 [1984]; accord Matter of Loren B. v Heather A., 13 AD3d 998, 999 [2004], lvs denied 4 NY3d 710 [2005]), we find that the waiver of appeal here was deficient and is not enforceable. Most notably, the record does not reflect that Family Court mentioned or explained the appeal waiver or its consequences, or that the father understood his appellate rights and that the appeal waiver was not an automatic consequence of his admission (see People v Lopez, 6 NY3d 248, 256 [2006]). Further, it is within this Court's "inherent authority to review any matter involving the welfare of a child in a Family Court proceeding" (Matter of Cadejah AA., 33 AD3d 1155, 1156-1157 [2006]). In addition, the father challenges neither his factual admission nor the terms of the ACD agreement and order and, consequently, enforcing the waiver of appeal would have no practical effect on the argument he raises on appeal.
Addressing the merits of the father's argument, to establish neglect, petitioner was required to " show, by a preponderance of the evidence, first, that [the] child's physical, mental or emotional condition has been impaired or is in imminent danger of becoming impaired and second, that the actual or threatened harm to the child is a consequence of the failure of the [*3]parent or caretaker to exercise a minimum degree of care in providing the child with proper supervision or guardianship" (Matter of Nathanael E. [Melodi F.], 160 AD3d 1075, 1076 [2018] [internal quotation marks and citations omitted]; see Family Ct Act §§ 1012 [f] [i] [B]; 1046 [b] [i]). This includes, as relevant here, "allowing to be inflicted harm, or a substantial risk thereof, . . . by misusing a drug or drugs" (Family Ct Act § 1012 [f] [i] [B] [emphasis added]). In assessing whether a parent has failed to exercise a minimum degree of care, "the relevant inquiry is whether a reasonable and prudent parent would have so acted, or failed to act, under the circumstances" (Matter of Natalee M. [Nathan M.], 155 AD3d 1466, 1467-1468 [2017] [internal quotation marks and citations omitted], lv denied 31 NY3d 904 [2018]).
Here, in finding that the father had neglected the subject child, Family Court was not limited to the evidence presented at the hearing to reopen the ACD and properly relied upon other evidence and proceedings before it on this matter, including the father's sworn admission during the ACD proceeding (see Matter of Jerrell OO. [Andrew OO.], 162 AD3d 1129, 1130 [2018]; Matter of Brent B., 279 AD2d 817, 818 [2001], lv denied 96 NY2d 712 [2001]). As noted above, at the ACD proceeding, the father, represented by counsel, admitted knowing that, throughout the mother's pregnancy with the child, she was using medication that had not been prescribed to her and that this placed the child at imminent risk of serious harm. The record reflects that these admissions were knowing, voluntary and intelligent (see Matter of Katie I. [Jonathan I.], 116 AD3d 1309, 1310 [2014]), and the father does not argue otherwise. At the hearing to restore the neglect petition, the father did not testify, which "warranted the strongest inference against him" (Matter of Stevie R. [Arvin R.], 97 AD3d 906, 907 [2012]). The testimony of the caseworkers established that, at birth, the child and the mother tested positive for opiates and the mother was addicted to them, causing the child's removal from the parents' custody. Following the ACD order, the father failed to, among other things, engage in recommended services and evaluations, attend monthly caseworkers' visits, enable monitoring of his home, attend parenting classes, apply for benefits or procure stable employment or suitable housing. The caseworker who eventually evaluated the father's home after the application to restore the ACD was filed noted safety concerns, including exposed electrical wires and insulation. During the relevant period, the father continued to reside with the mother, who continued to abuse drugs, and their second child born in June 2017 was also removed after testing positive for drugs.
We are satisfied that the record as a whole supports the finding that the father, aware of the mother's drug addiction, neglected the child by failing to exercise the minimum degree of care to ensure that the mother did not abuse drugs during her pregnancy, thereby exposing the child to an imminent risk of harm, including being born under the influence of such drugs (see Matter of Ja'Vaughn Kiaymonie S.[Nathaniel S.], 146 AD3d 422, 423 [2017]; Matter of Jamoori L. [Danette B.], 116 AD3d 1046, 1047 [2014]; Matter of Orlando R. [Orlando R.], 112 AD3d 525, 525-526 [2013]; Matter of Kierra C. [Kevin C.], 101 AD3d 993, 994 [2012]; Matter of Stevie R. [Arvin R.], 97 AD3d at 907; Matter of Niviya K. [Alfonzo M.], 89 AD3d 1027, 1028 [2011]; Matter of Carlena B., 61 AD3d 752, 752 [2009], lv denied 13 NY3d 703 [2009]; see also Matter of Darcy Y. [Christopher Z.], 103 AD3d 955, 957 [2013]). As Family Court's findings are supported by a sound and substantial basis in the record, they will not be disturbed (see Matter of Natalee M. [Nathan M.], 155 AD3d at 1468).
Devine, J.P., Aarons, Rumsey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.
Footnotes

Footnote 1: Notably, where a waiver of appeal is enforced, it does not affect the appealability of the order or require dismissal of the appeal but, rather, simply "forecloses appellate review of all claims that might be raised on appeal, except, of course, those categories of claims that survive such waivers under [the] case law" (People v Callahan, 80 NY2d 273, 285 [1992]).